May it please the Court, my name is James Lewis Griffith and I represent the appellant Yellowbird Bus Company. And do you wish to reserve any time for rebuttal? I wish to reserve three minutes, Your Honor. Okay. This is an appeal from a decision by the District Court dismissing our declaratory judgment action with dependent claims of breach of contract in bad faith. The issue, of course, was the interpretation of a policy of insurance. That issue has been before the members of this panel on a number of occasions. Let me just, just to get some of the underbrush away. Under appellate jurisdiction, you filed two notices of appeal, that's correct? Yes, Your Honor. One in July and one in August or something like that? Yes, Your Honor. It would seem to me that you filed your first notice, that takes the matter away from the District Court. Therefore, there's nothing that the District Court can do absent a remand from us in order to enter an order that would result in a second appeal. It may be form over substance, but it would seem that that's the correct way to view it procedurally. What happened was that we filed the notice of appeal. The court had granted leave to file amended pleadings with regard to the dependent claims of contract breach and bad faith. When the court then entered the order dismissing those in order to have all the issues together, we filed a second notice of appeal. And that's why there are two different numbers in the case, Your Honor. Well, but do we have jurisdiction over both? Yes. There's no objection to the jurisdiction. No, no, no. It doesn't work that way. You can't confer, parties can't confer jurisdiction on the court. Either we have it or we don't based on statute. And I don't see how we have jurisdiction over the second appeal, clearly the first. Okay. Well, the first was with respect to the interpretation of the policy. And that's what we're most concerned about. And that is basically that we believe the court erred with respect to its interpretation of the coverage. The rules are clearly set forth by this court in the Stafford versus Scottsdale Insurance Company. The court's purpose is to interpret the contract as it is written. And that if the words are clear and unambiguous, the court can interpret it as a matter of law and it should enforce it as it is written. And that only if the court were to find that there are ambiguities should the court then resolve the ambiguities in favor of the insurer. So in this policy, you can have, in the course of a year, an unlimited number of occurrences. Is that correct? That is correct. And the question then becomes, is there a policy or an excess policy limit with respect to each occurrence? And you're saying that the words subject to the above provisions respect, this is under the occurrence limit, subject to the above provision respecting aggregate, whatever that liability state in the declarations as per occurrences, the total limit of liability for ultimate net loss, which would be $4 million. So you're saying that there was a carve-out for automobile. Yes, and that carve-out appears three places in the policy. It appears on the first page, the declaration page. I mean, the declaration page is what is telling the insurer that you just paid a $90,000 premium for. And it says in there, under that situation, with respect to the limits of liability, that with respect to all other coverages combined, it's $4 million except automobile liability, which is not subject to any aggregate limit. So if you're right, the $4 million number that's noted in the occurrence limit section under Section 3 of the excess policy, under B, that doesn't mean anything. That $4 million could have been $10 million, $20 million. Probably under your reading, it should have been, it is unlimited. It is. Or they could have used, they wrote this policy. They could have said, this means per occurrence, per accident, some limitation. But doesn't the $4 million then have any, I mean, doesn't it have any significance then? It has significance if the claim that is asserted is a claim for products at hazard, completed operations, if it has all other coverages combined of any type, it has application. It does not have application with respect to automobile liability. And that's what we're dealing with. And it says it there. And it says it in limits of liability. And then it says. Here's my sort of just blink response question when I first looked at this. How much, what premium did you pay to get this kind of coverage? We paid, according to the declaration page, an initial payment of $90,000, $90,193. So you paid $90,000 and you're saying that if there were 25 accidents in the course of a year, there is unlimited liability undertaken under this excess policy by Lexington? Yes. And that's consistent with the underlying policy. The underlying policy that we purchased and negotiated says that there's $1 million per accident. So no matter how many accidents we had during the year, whether it was five years, 10 accidents, whatever, there was a million dollars underneath the mask to every one of those claims. And in that sense, there's no aggravated error. It sort of invites the obvious question is what insurance company in this world would take $90,000 and agree to unlimited liability under the bond? That has occurred in many instances in which, you know, this is a standard language policy that they wrote. We're not responsible for whether or not they failed. I agree with you. It could have been written better, but it just doesn't ring. And I did, you know, some of this work with regard to insurance companies in a private sector. I understand that. And I've never seen anything where an insurance company would ever agree under its protocols to unlimited liability. Well, we submitted to the lower court, which they did not acknowledge, was the affidavit of Mr. Hicks, the owner of the bus company, which said that that's specifically what he asked for and what he negotiated. Is there any correspondence that said, look, here's what I'm asking for. I'm asking for a complete carve out with regard to automobile liability coverage. And that means, you tell me what the premium is, but that means that there can be as many occurrences as happened during the course of a policy period, and there is unlimited liability with regard to what you pay out per occurrence. This case was dismissed on a preliminary motion. We never got to discovery. We never had a chance to develop a record on that. We never had a chance to interview the insurance brokers or anybody else. You did have a chance to file an amended complaint to put some more facts before the court, and you did not do that. But the only two areas that the court allowed us to file an amended complaint was on the contract action and on the bad faith claim. Those were both dependent upon the interpretation of the policy. Well, the contract action is the interpretation, and you could have put in your complaint the basis for reasonable expectations. Well, we did not do that because we felt the policy language was so perfectly clear, Your Honor, and we regard the fact of that is that if they wanted to say that the per occurrence means that that's all we have to pay, they had an opportunity to do that in the occurrence limit section of the policy. And there in that section of the policy, they made it directly subject to the same. I mean, we can sit here and say, did they make a good bargain or a bad bargain?  I think the function of the court is to say whether they meant it or they didn't mean it, whether it's reasonable or unreasonable, if that's what they wrote and they're the scrivener of this policy, well, that's what they're stuck with. And we can argue all about whether or not the premium was reasonable or unreasonable, but if you think about the fact of what was below them of over a million dollars per accident, it's not unreasonable that they would do this three times in the policy and say there is no aggregate limit on liability. If you're the purchaser of a policy and you read that, what other interpretation would you come to as an ordinary business person, not an expert in insurance law? Well, the way it appears that they are reading it is they're saying under the aggregate provision under section 3A, where it says that subject to an aggregate limit of liability with respect to all – applying separately to all other coverages combined except automobile liability, which is not subject to any aggregate limit. I think the word – what's missing is the words per occurrence. But then you go and you say down below under the occurrence limit subject to the above provision respecting aggregate, whatever that means, the – it's saying that there is no aggregate with regard to the policy, but there is per occurrence an aggregate of 4 million. I mean, that's the interpretation. No, but that's not what the policy says. The policy says three places. In the declaration page, there's no – But let me go back. Is there any – this is one of those things – I mean, this is – it's so good that from your perspective, don't you want to – it's the old saying, if it's too good to be true, it's too good – it's not true. Did anybody believe, note internally, or write to Lexington that says, here's what I interpret this policy to mean with respect to automobile occurrences? There is no limit. No, Your Honor, that did not happen because when Mr. Hicks got the policy, he looked at it and said, terrific, that fits perfectly with what I brought on my underlying coverage, and that's what I wanted, and that's what I have. His policy before that had the same thing? Yes. You sure about that? I believe it did, Your Honor. It's the same form that we've had for years. The underlying policy was written with a different company, and that's the one that had a million dollars per accident, whether it was one accident or 10 million accidents. Why don't we get Mr. Treadwell up and see what he has to say in response to your points? Good morning, Your Honors. May it please the Court, Scott Treadwell on behalf of Lexington. Let's start in – you know, just looking at the language here, when you first look at it, it seems to say that as to the aggregate limits, you take automobile liability and you put it on the sidelines and say it's not subject to any aggregate limit, and my words probably should have used the words per occurrence, or maybe not. Then the next one, occurrence limit subject to the above provision respecting aggregate, and it goes on and says that there's a total limit of liability per occurrence. The question is, why wouldn't you just on its face read it as Mr. Griffith reads it? Well, to be fair, Your Honor, it took us a long time to understand what Mr. Griffith was even talking about. No, I understand. But believe me, I understand what he's saying. So it appears – And I understood in the blink of an eye what he was saying. It appears to us that he's equivocating. The terms aggregate and occurrence are legally distinct terms, not only in the policy but in all the coverage decisions on the point. What you've got to explain to us here is – The subject to language – Right. What does it mean? Informs the insured that no matter what the occurrence limit, the insured may not recover more than the aggregate limit, assuming there is an aggregate limit applicable to that coverage. That's all that language is suggesting. The subject to is saying, just as Judge Rubino understood it to be, that if there is an aggregate limit on this policy for this coverage, then it will be subject to that. But that's separate and apart from any questions regarding the occurrence limit. The occurrence limit is per accident, not per number of claims. It's per accident. This is one accident. This is one occurrence. That's why it's limited. But unlike products coverage, automobile coverage has no aggregate limit. And the absence of an aggregate limit in and of itself is not unusual. Lots of policies don't have aggregate limits, but they have occurrence limits. Explain what aggregate limit means. An aggregate refers to a policy period, Your Honor. So let's suppose a policy starts January 1 this year, ends January 1 the next year. The aggregate amount for that entire period of all the claims the company will pay will be limited by an aggregate coverage limit. Okay? So for product hazard and completed operations, the aggregate is $4 million. Correct. All right. But as to automobile, that doesn't apply. Correct. And that's very common in the insurance industry. So you still have a per occurrence limit of $4 million. Correct. For the very reasons that Your Honor pointed out earlier. If we had no limit on an occurrence policy, you wouldn't have insurance. No carrier would ever write an unlimited policy. But Mr. Griffith's point is that one line, subject to the above provision respecting aggregate, that has to mean that's a carve-out from what the rest of the sentence says. There's a limit of liability with respect to ultimate net loss sustained by one or more persons as a result of one or more occurrences. Any one occurrence, excuse me. So that has to be a carve-out, doesn't it? Subject to the above provisions respecting aggregate? Sure. That's a carve-out, which is to say that where there is an aggregate limit applicable, then that would be a limit at the end of a policy period. So subject to that limit, where there's an aggregate limit applicable. You could have two occurrences involving bus accidents. Yes. For each occurrence, you'd have a $4 million limit. Correct. So if the aggregate doesn't apply, you're going to exceed the $4 million in a year. That's right. Exactly. Per occurrence, you have $4 million. And just so the panel is aware, this is not uncommon in the insurance industry. Automobile coverage, because it involves different types of losses, is often without an aggregate limit. Products coverage, because it often involves much bigger coverages, is often given an aggregate limit. So to carve out, as your Honor is suggesting, the automobile portion of this is very common. It's very common to have an occurrence limit in automobile coverages. Well, let me state that even more fully. I know of no policy ever anywhere where there's been no occurrence limit. That is an impossibility, because there'd be no way to know what the premium could be for that. You couldn't sell that type of a coverage. There always has to be an occurrence limit. Our research, to be frank, not only found no cases where anyone, where the courts had ever held that there was an unlimited occurrence limit, but actually we found no cases where anyone even had the courage to make that argument. That's just such an absurdity on its face, which is why we had trouble understanding what he was suggesting to begin with. Well, I mean, I think what Mr. Griffith would say is, if you wanted to have it your way, the way it probably should read, is subject to the above provision respecting the number of occurrences, comma, the limit of liability is $4 million per occurrence. I think in hindsight, your Honor, we probably could find better ways to write a lot of questions. The word aggregate is a major problem. I wouldn't concede that. I think, Your Honor, we could find you. Well, we wouldn't be here if the word aggregate was some other word. I'm not sure I agree with that either. I think this complaint, this declaratory judgment action has been filed not because there's a reasonable argument, but to delay the adjudication of the coverage issue long enough to keep a defense in the underlying case. The underlying case remains pending. As we understand it, it's about to go to trial in less than a month. During that period of time, Lexington has, in good faith, continued to provide a defense, notwithstanding the fact that the policy has long since eroded. So there's still five claims that are not resolved? Correct. And it is our position. There's $1,000 left on the policy, right? There's $1,000 left without the indemnity. What happens is, once the underlying coverage is exhausted, which happened now almost two years ago, that $1,000, under the policy terms, erodes with the defense costs. Now that eroded almost two years ago, but Lexington has, in good faith and in abundance of caution, continued to defend during the pendency of this litigation. And it is our position that this litigation is purely frivolous. It has been done solely to keep the defense alive. So, when I said to you that under aggregate 3A, where it says all other coverages combined except automobile liability, which is not subject to any aggregate limit, when I said maybe you want to put the words per occurrence, that obviously would be incorrect. You don't want the words per occurrence because there is an aggregate limit per occurrence. There is an aggregate limit. I hesitate to agree with you about that because I don't think the term aggregate can be put in the same clause. There is a limit per occurrence. An aggregate limit has a different connotation, a policy period connotation. But that's the whole problem. The word aggregate was put into the occurrence limit clause. But only if you read it as you're being asked to, which is to substitute one clause for the other. If you simply read the occurrence language as it's pointed, if you look at our brief, we've walked you through. First, you look to what the definition of occurrence is. Then you look to the definition line for what the limits are. Then you go back to the declarations page. The declarations page says limits $4 million. Beneath that, it says aggregate limit. But there's no connection to that. You're saying aggregate limit has a well understood meaning in the insurance practice? Not only there, but also within the definition of the policy and within the case law. Aggregate is a very distinct term. And the only way you can make the arguments that are being advanced here on behalf of the insured is to equivocate between the very distinct meanings between aggregate and occurrence limits, which, fortunately, Judge Rubino seemed to understand and applied accordingly. Well, in part, because it just doesn't make sense to do it otherwise. But one could make a reasoned, plausible argument that there is ambiguity here. I'm not going to ask you the difficult question is, have you changed your policy since then? Because that's not the case before us. But it would seem that maybe that's something they ought to consider if they haven't done so so far. I mean, the best thing you have going for you is, it's just absurd to read it as Mr. Griffith reads it. But Mr. Griffith, what he's doing is reading it just literally. He's a textualist. And you're saying, I know, that is not the way it's understood in the industry. That's not the way it's understood in the industry. But the policy has to be written so that we've got this plain language that we're getting into in the last couple of decades. One could make a good argument here that plain language superficially aids his case. Your Honor, if I may just conclude. I think it's, the panel seems to understand well that, leaving aside for a second, whether we could have rewritten this in hindsight more clearly. You would have to have ignored the $4 million occurrence limit to reach the result Yellowbird has. It's exactly what Judge Rubino looked at. He said. Once again, putting, I think what Mr. Griffith would say is, yep. There's a $4 million limit. It applies to everything except automobile liability coverage. Except that that's not what the occurrence portion says. The occurrence portion says $4 million per occurrence. Now what he's suggesting is all of that language would have to be thrown out. It's superfluous. It's unnecessary. It's not superfluous as to products, operations coverage, products coverage, all other coverages combined. But it is carved out with respect to automobile coverage. I mean, I'm just not. I understand that that's, you're just repeating what Yellowbird's argument is. I, I, I, perhaps I'm missing something still then with regard to all this. Because if you walk through the language as it's written, the only thing that connects an occurrence limit to the aggregate limit is the one clause that says subject to. Nothing else. The occurrence limits and aggregate limits are spoken of completely differently. But sometimes that's all it takes. But the subject to language in this case, I'm, I'm having trouble, I guess, perhaps, still understanding where the ambiguity is. Mr. Griffith would be here, you know, if there were two bus accidents and each had run up several million dollars, he'd be happy with the interpretation you're giving because it's not subject to the aggregate limit. He'd be entitled to $7, $8 million of coverage. Perhaps. I think what's happened here is we have a 65 claimant case. Correct. Where we have losses that well exceed the $4 million in Lexington's coverage and the $1 million that was beneath us. And they're, they're, we're trying to find coverage where there isn't any. If Mr. Griffith were correct in his interpretation of our policy, that same law, if the Third Circuit were to find that, would also have applied to the underlying policy here. Okay, well, as you finish up then, let's go back to that line. Subject to the above provision respecting our good, you're saying that means what? It informs the insured. I mean, just, just give me in 25 words or less, what is, what is subject to the above provision respecting, I, I suggest that maybe aggregates should be changed for the number of occurrences, but tell me how you interpret it. It informs the insured that no matter what the occurrence limit, the insured may not recover more than an aggregate limit. If there's an aggregate limit applicable. Okay. Okay? All right. Thank you, Your Honor. One of the things I'm going to ask counsel, just I'll do it now, when you are done, if you'd go to the clerk's office, I'd like to get a copy made of this transcript. Sure. Thank you. It would be helpful to us. You can split the cost. I, I hardly think a case in which we are facing $10 million demand for ongoing cases and is a frivolous exercise by us in seeking. No, I'm not, I'm not, nobody, I'm, nobody on the panel is saying it's frivolous. But the point is that, I, I think, what, what, the point, the argument that you're making, it appears at first glance as if it is, I don't mean absurd in a negative way, but it's incredulous. It just, it, there isn't, as I said before, no insurance company in the world would do that. And I think what you have to say, your argument is, hey, look, maybe there is an argument the other way, maybe. But if there is, it's ambiguous, and therefore, ambiguities go in favor of insurance. I think the questions that you've been asking about, well, should this say per occurrence, or should we have added, that in, in itself is ambiguity per se, in, in my opinion. And then if that's the case, then the standard law in Pennsylvania is you resolve that in favor of my client. And I think that was the second part of our argument. I'd also point out to the court on page 13 of my opponent's brief. He says, there's no aggregate limit applicable herein. He concedes to that in his brief, that there is no aggregate limit. And so then you get down to the- Yeah. That's where you get, what's, what, what does aggregate limit mean, and what is limit per occurrence? Yeah. And, and you could have, you know. An occurrence. You could have 100 occurrences. Right. So that's what that means. Well, also, the point is, he's saying, he wants to say there's an aggregate limit per occurrence. If you look at the declarative, on the declaration page, there is no such language limiting that coverage. There's no language that says that at all. And if he, he wants to say that to make this policy reasonable, you have to write this other language in. You had a, just look at the real world. You had a million dollar policy. And you had that, you needed what, four million more? Is that correct? Well, we've been through that four million. No, no, but you had, you needed excess coverage. Oh yeah. Was it, there's a state requirement. City of Philadelphia. City of Philadelphia requirement. And we needed that regardless of the number of accidents. And that's why it was important not to have any aggregate. I mean, we're hauling kids on 100 buses a day. This kind of coverage was absolutely what we asked for and what we, what the policy says we got. So, and in your example, you could have a hypothetical, or in your case, you could have a hypothetical as you interpret it. That basically means that an insurance company writing one small excess coverage policy could, in effect, be in an insolvency proceeding because it had agreed to unlimited liability. The sky is the limit. I totally disagree with you. I have a three million dollar policy on my automobile insurance. I paid $675 to get it. We paid $90,000. It's not absurd when you look at what they charge us in a premium. Well, $90,000 versus, you know, something odd infinitum, that's just not the way the insurance industry works. Well, then write that into the policy and don't give me a policy that says I have it. And you're paying $600 for one car as opposed to $90,000 for 100 buses? It's two cars, but I understand. I got the point. Got the point. Thank you very much. Thank you to both counsel for well presented arguments. Again, we'd ask if you would get together and have a transcript prepared, and we'll take the matter under advisement. And call the last case of today. I think it's now, it's noon, so it's afternoon. United States versus Wright.